IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION**<br>**NO.  15-138-1** |
| **v.** | |
| **JAMES DAVIS** | |

## MEMORANDUM OPINION

Defendant James Davis moves for compassionate release pursuant to the First Step Act,

18 U.S.C. § 3582(c)(1)(A)(i), in consideration of the dangers posed by the COVID-19 pandemic.

For the reasons that follow, his motion will be denied.

### I.    BACKGROUND

James Davis is currently serving a 121-month sentence for a public corruption scheme

whereby Davis provided a stream of undisclosed benefits to then-Sheriff of Philadelphia John

Green in exchange for lucrative government contracts for his companies, Reach

Communication's Specialists, Inc. and RCS Searchers, Inc. (together, "Reach").  Green was the

Sheriff of Philadelphia from 1988 to 2010.  From 2002 to 2011, Reach provided services related

to Sheriff's sales of foreclosed properties such as advertising of properties to be sold, preparing

handbills to post on properties, preparing distribution policies for the properties sold, preparing

deeds and other documents, conducting settlements, and filing deeds.  Over this nine-year period,

Reach received over $35 million from the Philadelphia Sheriff's Office.  All the while, Davis

provided a series of kickbacks worth over $675,000 to Sheriff Green that ensured his city

contracts would steadily increase.  Most notably, Davis purchased and renovated a home for

Green and his wife and sold it to Green at a loss of over $39,000; he hired Green's wife as a

subcontractor and paid her over $89,000; he facilitated over $65,000 in hidden campaign

contributions to Green's 2007 reelection campaign and directed the campaign not to report the contributions; he made personal loans of $4,000 and later $10,000 to Green who has not paid the money back; and he provided over $320,000 as gifts and interest-free loans to help Green buy a retirement home in Florida.  Additionally, Davis filed false business and personal income tax returns in 2007 and failed to file personal tax returns for 2008, 2009, and 2010.

On February 20, 2018, a jury found Davis guilty of conspiracy to commit honest services wire fraud and extortion under color of official right, one count of honest services wire fraud, two counts of filing a false tax return, and three counts of willful failure to file a tax return.[1]  On March 1, 2019, Davis was sentenced to 121 months of imprisonment, one year of supervised release, $872,395.83 in restitution to the Internal Revenue Service, and a $475 special assessment.  Davis has since served approximately 23 months of his sentence, including credit for good conduct.  He is currently serving his sentence at FCI Fort Dix.

Davis requested compassionate release from the warden of FCI Fort Dix on October 22, 2020, which request the warden denied on October 23, 2020.  Davis submitted a second request on October 29, 2020 and has not heard back.  On January 14, 2021, Davis filed this motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting compassionate release due to his age (70 years old), serious medical conditions—including obesity, asthma, high blood pressure, high cholesterol, arrythmia, sleep apnea, and a history of prostate cancer—and the COVID-19 outbreak at FCI Fort Dix.  The Government opposes his motion, arguing that the factors set forth in 18 U.S.C. § 3553(a) weigh against his release.

II.    DISCUSSION

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to

---

[1] The Third Circuit affirmed his convictions rejecting Davis's challenge to the sufficiency of the evidence and the Sentencing Guidelines calculation for the conspiracy and honest services fraud violations.

seek compassionate release from a court on their own motion, not just through the Bureau of Prisons." *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019); *see* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term of imprisonment. . . ."). Specifically, provided the defendant has exhausted his administrative remedies, Section 3582(c) permits a district court to reduce a defendant's sentence "after considering the factors set forth in section [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's applicable policy statement essentially mirrors this language, adding that a sentence reduction may be granted only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1)(A)(2).

Because Davis has exhausted his administrative remedies by unsuccessfully seeking compassionate release from the warden of FCI Fort Dix,[2] his sentence may be reduced if: 1) extraordinary and compelling circumstances warrant such a reduction, 2) he is not a danger to the safety of another person or to the community; and, 3) release is appropriate in consideration the relevant factors set forth in Section 3553(a).

### A.      Extraordinary and Compelling Circumstances

While Section 3582 does not define "extraordinary and compelling" circumstances that warrant relief, the Sentencing Commission's policy statement elaborates on the term in an application note. *See* U.S.S.G. § 1B1.13, cmt. n.1(A)-(D). According to U.S.S.G. § 1B1.13, a

---

[2] *See* 18 U.S.C § 3582(c)(1)(A) (explaining that a defendant may bring a motion for compassionate release pursuant to this Act after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility).

defendant's serious physical or medical condition is "extraordinary and compelling" if it "substantially diminishes [defendant's ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *Id.*  It is the defendant's burden "to prove extraordinary and compelling reasons exist." *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020).

According to Davis's motion and medical records, he is 70 years old and has a history of obesity, prostate cancer, asthma, hypertension, atrial fibrillation, radiation cystitis, kidney stones, and osteoarthritis in his left knee.  Davis contends that his age and medical conditions, in light of the increasing spread of COVID19 at Fort Dix, make him vulnerable to a severe outcome were he to contract COVID-19.  There are currently 56 active cases of COVID-19 among the incarcerated population at Fort Dix, which has experienced several large outbreaks of the virus. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Feb. 16, 2021).  Some 1,605 people incarcerated at Fort Dix have been infected by and recovered from COVID-19, and unfortunately one person succumbed to the virus last month.  *Id.*

During the COVID-19 pandemic, and especially in a facility experiencing an extensive outbreak of the virus, Davis's medical conditions constitute an extraordinary and compelling justification for his release.  The Government concedes that, under U.S.S.G. § 1B1.13 n.1, Davis's obesity and prostate cancer present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" during the COVID-19 pandemic.  Davis has a Body Mass Index (BMI) of about 32, which the Center for Disease Control (CDC) classifies as obese.  *See* Center for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html (last updated Dec. 23, 2020).  The CDC warns that obesity and cancer are underlying medical conditions that place a person at an increased risk of severe illness in the event of a COVID-19 infection.  *Id.*  Moreover, the CDC warns that asthma and hypertension are conditions that might increase the risk of severe illness from COVID-19.  *Id.*  In addition to his medical conditions, Davis is 70 years old.  According to statistics published by the CDC, Davis's age places him at a five-times higher risk of hospitalization and 90-times higher risk of death than those in the 18-29-year-old comparison group.  *See* Center for Disease Control, *Covid-19 Hospitalization and Death by Age,* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated Aug. 18, 2020). Davis therefore demonstrates a basis for compassionate release.

**B.        Section 3553(a) Factors**

Nevertheless, Section 3582(c) permits a district court to reduce a defendant's sentence based on a qualifying medical condition only "after considering the factors set forth in section § 3553(a)[3] to the extent that they are applicable[.]"  18 U.S.C. § 3582(c)(1)(A).  In consideration of the relevant factors under Section 3553(a), in particular the seriousness of Davis's public corruption offense and the time remaining on his sentence, his request for compassionate release will be denied.[4]

---

[3] Section 3553(a) directs a sentencing court to consider, as relevant here:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

[4] Because the Court finds release incompatible with the Section 3553(a) factors, there is no need to

5

Section 3553(a) directs the court to consider the nature and circumstances of the offense, as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to criminal conduct.  Release after only 23 months of a 121-month sentence would fail to reflect the seriousness of Davis's nine-year public corruption scheme that defrauded the citizens of Philadelphia.  Corruption corrodes the public's trust in our government and the city of Philadelphia and must be treated with the requisite seriousness.  This was no minor lapse in judgment; as described above, Davis provided a steady stream of kickbacks to Sheriff Green including real estate discounts, undisclosed campaign donations, and large monetary gifts and interest-free loans that were never paid back.  Reducing Davis's sentence after serving only 20% of his time would fail to provide adequate deterrence to Davis specifically or to other others who contemplate corrupting public institutions with criminal pay-to-play schemes.  *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming the district court's denial of compassionate release despite petitioner's serious medical condition because release after 19 months of 180-month sentence would fail to reflect the seriousness, promote respect for the law, or provide adequate deterrence for the former mayor of Allentown's public corruption offenses involving steering city contracts and providing favors in exchange for campaign contributions).

Section 3553(a) also directs the court to consider the relevant characteristics of the defendant—here, his health concerns—and the need to provide for medical care in the most effective manner.  *See* 18 U.S.C. § 3553(a)(2)(D).  Neither of these factors weigh in favor of compassionate release.  While Davis's medical conditions are undoubtedly serious, his health appears appropriately controlled despite the COVID-19 pandemic.  His prostate cancer is

address whether Davis poses a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g).

reported as stable.  Davis does not allege that FCI Fort Dix has failed to treat or otherwise mismanaged his medical care.  To the contrary, Davis receives regular medication for the prostate cancer, hypertension, and atrial fibrillation, and the osteoarthritis and asthma as needed. There is therefore no basis to conclude that Davis's medical care cannot be effectively managed at FCI Fort Dix at this time.

      An appropriate order follows.

**February 19, 2021**                                            **BY THE COURT:**

                                                 */s/ Wendy Beetlestone*

                                                 _____

                                                 **WENDY BEETLESTONE, J.**